UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **G S M A L KENNELS LLC** | **CASE NO. 6:25-CV-00254** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **ESTATE OF TERRY V BILLS JR ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is Defendant, BP America Production Company's Motion for Judgment on the Pleadings (Rec. Doc. 33). Plaintiff, GSMAL Kennels, LLC, opposed the motion (Rec. Doc. 35), and BP replied (Rec. Doc. 37). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the parties' arguments, and for the following reasons, the Court recommends that BP's motion be granted.

### Facts and Procedural History

GSMAL Kennels filed this suit in state court in October 2024 for its allegedly contaminated property in St. Landry Parish, Louisiana. GSMAL sued BP, whose

predecessors' oil and gas operations on the property decades ago allegedly caused the contamination.[1] (Rec. Doc. 1-2). The record establishes the following facts:[2]

- The property in question was the subject of a 1945 mineral lease between its owner, Doreston Aucoin, and FJ Muller. (Rec. Doc. 25-2).

- According to GSMAL's petition, Stanolind Oil & Gas Company and/or Pan American Petroleum Corp. (both BP's alleged predecessors) were operators on the property until 1966. (Rec. Doc. 1-2, p. 2 and 25).

- In 1971, Terry Bills, Jr., one of several leaseholders throughout the preceding years, released the leasehold, thereby terminating the lease. (Rec. Doc. 25-4; Rec. Doc. 1-2, p. 26-29).

- On March 4, 2020, GSMAL purchased the property in question from heirs of Dolores Aucoin Smith and Eugene Smith ("the Smith Heirs"). The act of sale

---

[1] GSMAL also sued the estate and heirs of Terry V. Bills, Jr., the most recent leaseholder. BP submitted in its Notice of Removal that the non-diverse parties were improperly joined. (Rec. Doc. 1). GSMAL did not move to remand.

[2] In ruling on a Rule 12 motion, the court is limited to the allegations of the complaint and any exhibits attached thereto; however, the court may also consider documents attached to the defendant's motion if they are referenced in the complaint and central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The court is also permitted to take judicial notice of public records as well as facts which are not subject to reasonable dispute in that they are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). The Court considers the various land-related documents as matters of public record, along with GSMAL's allegations and uncontested charts taken as true for purposes of this motion.

conveys the sellers' "rights to bring all personal and/or real claims, based in tort or contract or quasi-contract, for remediation and property damages caused to the Property by oil and gas exploration and production activities." (Rec. Doc. 25-5, p. 4).

- GSMAL filed this suit in state court on October 18, 2024. (Rec. Doc. 1-2).

BP removed the case in February 2025 (Rec. Doc. 1) and now moves to dismiss GSMAL's claims for breach of contract and tort as prescribed.[3]

## **Law and Analysis**

A motion for judgment on the pleadings under Rule 12(c) is analogous to a Rule 12(b)(6) motion to dismiss:

> A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir.2004) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 313 n. 8 (5th Cir.2002)). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes,* 278 F.3d at 420 (internal quotations omitted). Although we must accept the factual allegations in the pleadings as true, *id.,* a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

*Doe v. MySpace, Inc.,* 528 F.3d 413, 418 (5th Cir. 2008).

---

[3] BP does not seek to dismiss Plaintiff's claim under La. R.S. 30:16, which authorizes citizen suits for violations of the rules of Louisiana's Office of Conservation (First Amending Petition at Rec. Doc. 1-2, p. 32). See Rec. Doc. 33-1, p. 2, fn. 2.

"In diversity cases, a federal court must apply federal procedural rules and the substantive law of the forum state." *Hyde v. Hoffmann-La Roche, Inc.,* 511 F.3d 506, 510 (5th Cir. 2007). Thus, Louisiana substantive law regarding subsequent purchasers and prescription applies in this case.

### I. The Subsequent Purchaser Doctrine

"The subsequent purchaser rule is a jurisprudential rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted." *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.,* 2010-2267 (La. 10/25/11), 79 So. 3d 246, 256–57. Under *Eagle Pipe*, the subsequent purchaser rule bars a property buyer from recovering for damages to the property which occurred prior to his purchase unless the seller explicitly assigned his personal rights to recover to the buyer, regardless of whether the damage was apparent. *Id.* at 275-76.[4]

---

[4] GSMAL submits that the subsequent purchaser doctrine "has become extremely limited following the Third Circuit's most recent rejection of that doctrine in *Castex Development, LLC v. Anadarko Petroleum Corporation.*" (Rec. Doc. 35, p. 10, citing *Castex Development, LLC v. Anadarko Petroleum Corp.*, 23-394 (La.App. 3 Cir. 11/15/23), 374 So.3d 384. However, in *Vinton Harbor & Terminal Dist. v. Reunion Energy Co.,* 2025-63 (La. App. 3 Cir. 7/2/25), the court clarified that its earlier opinion in *Castex Development* "had no effect on the subsequent purchaser rule as enunciated in *Eagle Pipe.*"

4

BP does not dispute that GSMAL acquired, through explicit assignment. the sellers' personal rights to sue "for remediation and property damages caused to the Property by oil and gas exploration and production activities." (Rec. Doc. 25-5, p. 4). Instead, BP argues that GSMAL cannot exercise rights which did not exist at the time of its acquisition. BP correctly states that a buyer cannot acquire personal rights which the seller did not possess at the time of the sale. See e.g. *Broussard v. Dow Chem. Co.*, No. 2:11-CV-01446-PM-KK, 2012 WL 6042535, at *7 (W.D. La. Dec. 3, 2012), *aff'd,* 550 F. App'x 241 (5th Cir. 2013) (dismissing a subsequent buyer's claims against an oil company, where the seller had not expressly acquired the personal right to sue the oil company from her seller); *Boone v. Conoco Phillips Co.,* 139 So. 3d 1047, 1055 (La. App. 3 Cir. 2014) (finding that the previous owner "had no right of action in tort to assign to the [plaintiffs] because [his] tort claims had prescribed eight years earlier," and that the assignment was therefore ineffective and "d[id] not provide the [plaintiffs] with a right of action in tort … for damages to their property prior to the [plaintiffs'] acquisition of the property"); *Black River Crawfish Farms, LLC v. King*, 2017-672 (La. App. 3 Cir. 2/7/18), 246 So. 3d 1, 7 (Where all real rights and obligations arising from a mineral servitude had been extinguished by law—prescription of nonuse in that case—at the time of the plaintiff's purchase, the plaintiff never acquired the right to enforce the obligation).

5

BP maintains that any claims the sellers, the Smith Heirs, had based in tort and contract were prescribed at the time of the 2020 sale to GSMAL, such that GSMAL did not acquire the right to sue it now attempts to exercise in this suit.

## II. Whether the Smith Heirs' contract claims were prescribed at the time of the sale to GSMAL.

GSMAL's breach of contract claim is premised on alleged breaches "of the oil, gas, and mineral leases, surface leases, servitude agreements and other applicable contracts." (Rec. Doc. 1-2, p. 9, ¶19-22). Breach of contract claims prescribe after ten years under La. C.C. art 3499; *Marin v. Exxon Mobil Corp.,* 2009-2368 (La. 10/19/10), 48 So. 3d 234, 256. GSMAL alleges that operators and/or lessees contaminated the property during the term of the lease and failed to remediate the property at the lease(s)'s termination. The evidence shows the leasehold was released in 1971. (Rec. Doc. 25-4; Rec. Doc. 1-2, p. 26). Thus, any claims arising from breach thereof expired in 1981 and, as a non-existent right, could not be assigned to GSMAL at the time of its transaction in 2020. GSMAL did not present any evidence or argument otherwise. See *Marin, supra.* Its breach of contract claims should be dismissed.

## III. Whether the Smith Heirs' tort claims were prescribed at the time of the sale to GSMAL.

Under Louisiana law, tort claims for damage to immovable property prescribe one year commencing from the day the owner of the immovable acquired, or should

have acquired, knowledge of the damage. *Marin v. Exxon Mobil Corp.,* 2009-2368 (La. 10/19/10), 48 So. 3d 234, 244, citing La. C.C. art. 3492 and 3493. "Ordinarily, the party pleading prescription bears the burden of proving that the plaintiff's claims have prescribed; however, when more than a year has elapsed between the time of the tortious conduct and the filing of the tort suit, the burden shifts to [the plaintiff] to demonstrate prescription was suspended or interrupted." *Kling Realty Co. v. Chevron USA, Inc.,* 575 F.3d 510, 517 (5th Cir. 2009), citing *In re Moses,* 788 So.2d 1173, 1177–78 (La.2001).

GSMAL's allegations and the evidence show that the alleged contamination occurred during or because of operations, which ceased in 1966. Hence, GSMAL's claims prescribed in 1967, unless prescription was interrupted or suspended. Plaintiffs in such cases often rely on the doctrine of *contra non valentem* to show that an otherwise prescribed claim survives.

The jurisprudential doctrine of *contra non valentem* and the essentially identical discovery rule, prevent the running of prescription until the damage is known, or at least knowable. *Marin*, at 245, citing *Corsey v. State, Through Department of Corrections,* 375 So.2d 1319 (La.1979). "[T]he doctrine of *contra non valentem* only applies in exceptional circumstances." *Id.*

> In assessing whether an injured party possessed constructive knowledge sufficient to commence the running of prescription, this court's ultimate consideration is the reasonableness of the injured party's action or inaction in light of the surrounding circumstances.

> …
> While prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong, and should not be used to force a person who believes he may have been damaged in some way to rush to file suit, a plaintiff is responsible to seek out those whom he believes may be responsible for a specific injury. In a case involving constructive knowledge, the time when prescription begins to run depends on the reasonableness of a plaintiff's action or inaction.

*State v. Louisiana Land & Expl. Co.*, 2020-00685 (La. 6/30/21), 347 So. 3d 684, 689, *aff'd on reh'g,* 2020-00685 (La. 6/1/22), 339 So. 3d 1163, quoting *Hogg v. Chevron USA, Inc.*, 09-2632, p. 7 (La. 7/6/10), 45 So. 3d 991, 997-98, 1001 (citations omitted).

In *Marin*, the Louisiana Supreme Court considered whether *contra non valentem* allowed the plaintiff property owners' claims to survive against oil companies which had contaminated the property with oil field waste dumped in unlined pits and waterways. Although the plaintiffs did not know the extent of the damage until just before filing suit, the court held their claims prescribed because they had known at the time of the contamination many years earlier that something was wrong: sugar cane was not growing in certain areas, they had demanded that Exxon remediate the property in order to grow cane, they knew of existing pits containing suspicious sludge, they knew certain pit areas were unstable, and they knew that Exxon had trouble cleaning and closing the pits in compliance with certain regulations. *Id*. at 246-48.

> Even though the damage [the plaintiffs] discovered later was more extensive, the sugarcane damage was an outward sign of "actual and appreciable damage," and was sufficient information to excite attention and put plaintiffs on guard and call for inquiry. … We find that at least by 1995, plaintiffs had sufficient information to excite their attention and they should have investigated further at that time. Therefore, it was unreasonable to wait until 2003 to file suit. Just as in *Hogg,* it is important to note that the allegations of their petition are based on the same facts that they could have discovered had they investigated in 1991 or 1995. No additional damage became apparent or occurred to excite their inquiry in 2003 so as to end the suspension of prescription under the discovery rule.

*Id*., at 249–50. See also *Kling Realty Co*., 575 F.3d at 518 (*Contra non valentem* did not save the plaintiff property owners' claims from prescription, where they were aware that crops would not grow in certain areas immediately following contamination decades earlier). Compare *State v. Louisiana Land & Expl. Co.,* 2020-00685 (La. 6/1/22), 339 So. 3d 1163, 1180, a legacy suit in which no evidence existed regarding the plaintiff school board's notice of potential contamination before consultation with an attorney. Though not discussed in the opinion, no evidence discussed indicated that oil equipment, pipelines, etc. were physically present on the school board property.

This case falls somewhere between *Marin* (where objective evidence such as unstable land and poor crops supported constructive notice of contamination) and *State v. La. Land* (where no evidence of constructive notice of any kind existed). The parties do not dispute that oil exploration operations occurred on the property until 1966 (Rec. Doc. 1-2, ¶5, referencing p. 25) and that the leasehold had been

9

released by 1971 (Rec. Doc. 25-4). Photographs attached to the complaint show, in GSMAL's own words, "certain wells and equipment located on the property." (Rec. Doc. 1-2, p. 32-48). GSMAL alleges that "Defendants failed to properly plug and abandon the well, and dismantle/decommission the tank battery located on the Property, including the removal of the attendant equipment, facilities, flowlines and foundation located on the Property." (Rec. Doc. 1-2, p. 2, ¶5). Further, GSMAL generally alleges that Defendants' daily operations caused the contamination. (¶12). In a January 2025 letter to the Louisiana Department of Energy and Natural Resources Office of Conservation, GSMAL's representative stated the violations of Louisiana's conversation law were evident in "abandoned oil field equipment and the existence of contaminated pits," as well as soil which smelled of petroleum and an undated GEM survey showing elevated chlorides. (Rec. Doc. 1-2, p. 49).

Is the presence of abandoned oil field equipment, pipelines, etc., without more (such as direct evidence of contamination) sufficient to trigger the duty to further investigate under constructive notice principles? Though no case directly answers the question, this Court finds in the affirmative. No allegations or evidence suggests that the condition of the property at the time of GSMAL's purchase was any more contaminated than it allegedly was at the time of operations. According to the evidence in the record, the abandoned equipment and pipelines about which GSMAL complains in its petition and to the Department of Conversation exist just as they

had since operations ceased in 1966. See *Ritchie Grocer Co. v. 2 H Inc.,* No. CV 14-2868, 2018 WL 1319211, at *4 (W.D. La. Mar. 13, 2018). ("The gravamen of the evidence, taken as a whole, illustrates that there was nothing new—factually speaking—after RGC's historic and ongoing knowledge of the presence of oilfield equipment on its property which would have constituted the sort of prompt which jurisprudence deems 'sufficient information' to cause RGC to make further inquiry or to file this suit.").

Although GSMAL broadly alleges in the petition that it did not have actual or constructive knowledge, its allegations in this regard are conclusory and lack any supporting factual allegations. (Rec. Doc. 1-2, p. 6, ¶14). The Court cannot consider conclusory allegations and unwarranted deductions of fact. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The Court finds significant that GSMAL did not offer any argument or evidence in response to BP's *contra non valentem* argument, instead arguing that the subsequent purchaser doctrine should not apply (an argument the Court rejects and finds immaterial, as the act of sale to GSMAL included the explicit assignment *Eagle Pipe* contemplates). See *Constance v. Austral Oil Expl. Co.*, No. 2:12-CV-1252, 2014 WL 5471921, at *6 (W.D. La. Oct. 21, 2014) (finding the plaintiffs' failure to offer any evidence showing their ancestor-in-titles' lack of knowledge warranted dismissal). *Contra non valentem*

11

does not save GSMAL's claims.[5] The Court finds that, although GSMAL acquired the Smith Heirs' personal rights to sue for contamination in 2020, the Smith Heirs possessed no such rights, which had prescribed by that time. Accordingly, GSMAL's tort claims should be dismissed.

## Conclusion

For the reasons discussed herein, the Court recommends that BP America Production Company's Motion for Judgment on the Pleadings (Rec. Doc. 33) be GRANTED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

---

[5] Neither party suggested GSMAL is claiming the existence of a continuing tort. Regardless, a continuing tort theory does not save GSMAL's tort claims from prescription. *Alford v. Chevron U.S.A. Inc.,* 13 F. Supp. 3d 581, 602 (E.D. La. 2014), *order amended on reconsideration* (June 4, 2014), interpreting *Marin* and *Kling Realty*, both *supra*. ("Once the defendant stops actively polluting the property, the tort ceases. Any subsequent inaction is not tortious, but simply a failure to remediate harm previously caused."); *Alford v. Anadarko E & P Onshore LLC*, No. CIV. 13-5457, 2014 WL 1612454, at *14 (E.D. La. Apr. 22, 2014).

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 23rd day of September, 2025.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE